**Captain Raul PASTRANA, Plaintiff,**

v.

**UNITED STATES of America, Bryant M. Chestnutt, etc., et al., Defendants.**

No. 82–2585–CIV.

United States District Court,
S.D. Florida, N.D.

Sept. 29, 1987.

As Amended Oct. 8, 1987.

Stuart A. Goldstein, Miami, Fla., for plaintiff.

Carole M. Fernandez, Asst. U.S. Atty., Miami, Fla., for defendants.

ZLOCH, District Judge.

THIS MATTER is before the Court upon Defendant, Bryant M. Chestnutt's, Motion For Summary Judgment (DE 62). Plaintiff filed suit in 1982 alleging that the United States of America, Bryant M. Chestnutt, ("Defendant"), individually and in his capacity as an employee of the Federal Aviation Administration ("F.A.A."), and Eastern Air Lines ("Eastern"), committed various constitutional torts which resulted in violation of his Fifth Amendment rights. The United States District Court for the Southern District of Florida, Edward B. Davis, J., granted the Defendants' Motions to Dismiss. On appeal, the United States Court of Appeals, Eleventh Circuit, in *Pastrana v. United States*, 746 F.2d 1447

(11th Cir.1984) affirmed the District Court's dismissal of the claims against the United States of America, the dismissal of the pendent state claims against Eastern, and the dismissal of the common law tort claims against Defendant, but remanded the case to the District Court to determine: (1) "the overall authority of Inspector Chestnutt's position (with the F.A.A.) and, (2) The nature and effect of his (Defendant's) letter," to see if he (Defendant) exceeded his authority and thereby violated Plaintiff's Constitutional right of due process. *Pastrana,* at 1450.

The Court of Appeals concluded its Opinion by stating:

Finally, we are mindful that Investigator Chestnutt may be entitled to qualified immunity for discretionary acts performed pursuant to his statutory duties. However, disposition of this affirmative defense must rest on the district court's findings concerning the scope of Investigator Chestnutt's statutory duties and the propriety of actions taken pursuant to those duties.

*Pastrana,* at 1451.

The letter referred to was a letter from Defendant in his capacity as a Principal Operations Inspector ("POI") to Plaintiff dated October 28, 1981 which, inter alia, ordered re-examination of Plaintiff's pilot qualifications and advised Eastern not to allow Plaintiff to serve as command pilot until the re-examination was complete. A copy of the October 28, 1981 letter ("the letter") is attached to Defendant's Memorandum of Law in Support of Motion For Summary Judgment (DE 63) as Exhibit 2–H. Unless otherwise noted herein, references to "Exhibits" refer to Exhibits attached to either Defendant's Memorandum of Law in Support of his Motion For Summary Judgment (DE 63) ("Defendant's Memorandum"), or Defendant's Notice Of Filing Exhibits In Regard To Summary Judgment Motion (DE 64) ("Defendant's Notice"), or Defendant's Supplemental Notice Of Filing Exhibits In Regard to Summary Judgment Motion (DE 69) ("Defendant's Supplemental Notice").

## BACKGROUND

On October 26, 1981, Plaintiff was the pilot-in-command of Eastern Flight 311. Upon landing at the Greensboro, North Carolina airport, the aircraft left the runway for a distance of approximately two hundred feet ("the incident") causing mud to cover two of the aircraft's tires above the brakes and also causing mud and grass to be sucked into the intake of one of the engines. Plaintiff failed to report this incident to the incoming flight crew which was taking over the aircraft and he did not record the incident in the aircraft log. (See Exhibits 2–B, 2–C, Defendant's Memorandum). Some of the passengers leaving the aircraft advised Eastern ground personnel that the aircraft may have left the runway upon landing. See Exhibit A, (Oral Initial Decision and Order of Administrative Law Judge, Defendant's Memorandum, at 141). Upon inspection, the captain of the incoming crew refused to accept the aircraft, and it was ferried to the Eastern facility in Atlanta, Georgia. (See Exhibits 2B and 2C; Exhibit A, at 143, Defendant's Memorandum). At the time of the incident, Defendant was the F.A.A. POI assigned to Eastern. Upon learning of the incident, he contacted Eugene Marfisi, Eastern's Director —F.A.A. Liaison, and requested an interview in Greensboro with the crew and Larry Youngree, F.A.A. Operations Inspector, on October 27, 1981.

Plaintiff chose not to be interviewed in Greensboro but advised Defendant through Mr. Marfisi that he would be available on October 27, 1981, in Miami. (See Exhibit 2, Defendant's Declaration, Defendant's Memorandum). The interview was rescheduled for October 28, 1981. Plaintiff refused to participate in the interview because he had not yet had an opportunity to discuss the matter with his union representative, whereupon Defendant served Plaintiff with the letter. (See Exhibit 2, Defendant's Memorandum).

## FINDINGS OF FACT

Pursuant to the directions of the Eleventh Circuit Court of Appeals in *Pastrana,*

the Court makes the following Findings of Fact.

The Court has reviewed the entire court file in this matter, heard and considered oral argument from counsel of record, reviewed the affidavits and declarations of David Harrington, Richard Nevill, and William Berry, and the exhibits attached to and referred to in the affidavits and declarations, all of which are submitted by Defendant in his Motion For Summary Judgment. The Court has also considered the declaration of Defendant, as well as the exhibits attached to Plaintiff's response to Defendant's Motion For Summary Judgment (DE 76). The Court notes that Plaintiff has not submitted any affidavits or declarations in response to Defendant's Motion For Summary Judgment. This Court has not considered any paper, pleading or motion outside of the court file. Further, this Court has given due consideration to this matter before taking pen in hand.

### A. *The Scope of Defendant Chestnutt's Statutory Duties*

1. The Federal Aviation Act of 1958 ("FAAct"), as amended, 49 U.S.C. Section 1301 *et seq.*, charges the F.A.A. with the responsibility to promote safety in civil aviation and in air commerce. (See Exhibit 1, Defendant's Memorandum).

2. "Administrator" as defined in the FAAct means the Administrator of the Federal Aviation Administration. 49 U.S.C. Section 1301(1).

3. The Administrator's authority to investigate alleged violations of FAAct (except Title V), the Airport and Airway Development Act of 1970, or the Hazardous Materials Transportation Act, or any regulation or order issued under these Acts, has been delegated to the various services and offices for matters within their respective areas for all routine investigations. Section 13.3(b) of the Federal Aviation Regulations ("FARS"), 14 C.F.R. Section 13.3(b). (See Exhibit 1, Defendant's Memorandum; Exhibit 1–A, Defendant's Notice).

4. F.A.A. Order 2150.3, Ch. 3, paragraph 300 charges the Chief Counsel for the FAA, the Associate Administrator for Aviation Standards, and the Associate Administrator with the overall responsibility for carrying out the enforcement policies established by the Administrator. These offices establish procedures and guidance for implementation of the F.A.A. enforcement program. (See Exhibit 1, Defendant's Memorandum; Exhibit 1–D, Defendant's Notice).

5. Paragraph 303 of F.A.A. Order 2150 cited in paragraph 4 above authorizes field offices to "investigate, coordinate, and report violations of all regulations which are discovered within their geographical area and for which they have enforcement responsibility." (See Exhibit 1–D, Defendant's Notice).

6. At the time of the incident and letter, Defendant was a POI (field officer) in a Flight Standards Division field office. (See Exhibits 1 and 2, Defendant's Memorandum).

7. POI's are charged with the investigation of incidents for enforcement purposes. POI's are authorized *to request* (emphasis added), on behalf of the Administrator pursuant to Section 609 of the FAAct, that certificate holders involved in incidents or accidents undergo re-examination of their qualifications to hold pilot certificates issued by the F.A.A. The Civil Service Commission Position Description for Principal Air Carrier Operations Inspector, "Principal Duties and Responsibilities," reads in part:

1.a ... As a Principal Inspector, the incumbent is responsible for ensuring compliance of the air carriers' aircraft operational programs with Federal Aviation Regulations, national and regional agency policy regulations, and with the operators' own agency approved practices and procedures, and may act on-the-spot to stop hazardous or potential unsafe practices.

1.f ... Participates as a team member in the investigation of accidents and incidents. Develops a factual analysis of his findings relative to the operational aspects which contributed to such accidents/incidents. Participates in the com-

pliance and enforcement program with respect to violations and complaints. (See affidavit of William M. Berry, Jr.; Exhibit 4, Defendant's Supplemental Notice).

General technical and administrative supervision is provided by the Chief, Air Carrier District Office, or by a Unit Chief with independent responsibility for regulating surveillance of the operations portions of the operations certificate of assigned air carrier. Actions taken by the incumbent are guided by adherence to both national and regional F.A.A. directives and sound safety practices.

(See Exhibit 4, III, Supplemental Notice).

8. When a POI has reason to believe that a pilot certificate holder may not be qualified to exercise the privileges of a particular certificate or rating, re-examination may be required. (See Exhibit 1, paragraph 15, Defendant's Memorandum; Exhibit C, Defendant's Memorandum; Exhibit 4, Defendant's Supplemental Notice).

9. Upon receipt of information concerning the incident which indicated that a possible violation had occurred, Defendant, in his POI capacity, notified Plaintiff of his investigation and gave Plaintiff the opportunity to present any pertinent information regarding mitigating circumstances. (See Exhibits 1, 2 and 2N, Defendant's Memorandum; Exhibit 1–F, Defendant's Notice).

10. As a general rule, the ultimate decision of the POI to request re-examination depends on the facts of a particular incident and the judgment and experience of the POI. (See Exhibit 2–L, Defendant's Memorandum).

B. *The Propriety of Defendant's Actions Taken Pursuant To His Duties as a POI*

11. Failure of a pilot to maintain control of an aircraft after landing and the failure of a pilot to follow required procedures for reporting such an incident are valid grounds for questioning the pilot's competency and judgment. (See Exhibit 1, paragraphs 17 and 18, Defendant's Memorandum).

12. In paragraph 30 of Exhibit 2 to Defendant's Memorandum, Defendant states that he believed Plaintiff had violated 14 C.F.R. 121.563 "Reporting Mechanical Irregularities" (Exhibit 2–G to Defendant's Memorandum) and 14 C.F.R. 91.9 "Careless or reckless operation" (Exhibit 2–M to Defendant's Memorandum). Despite Plaintiff's contention that he was not aware that the aircraft had left the runway upon landing, the Administrative Law Judge, who held a hearing on the incident, found otherwise and felt Plaintiff's contention to be "incredible." (See Exhibit A, Defendant's Memorandum, Order of Administrative Law Judge, at 138–145).

13. Defendant states that he noted that Plaintiff had received an unsatisfactory evaluation on July 26, 1981 as to several areas associated with approaches and landing of aircraft. (See Exhibit 2, paragraph 7, Defendant's Memorandum; Exhibit 2–A, Defendant's Memorandum).

14. Defendant states in Exhibit 2 to his Memorandum that prior to issuing the letter in question he consulted with his supervisor (paragraph 24), looked to F.A.A. guidelines for assistance (paragraph 26), and discussed the incident with the F.A.A. program manager (paragraph 29).

15. The declaration of Richard R. Nevill, Defendant's F.A.A. supervisor at the time of the incident, (Exhibit 3 to Defendant's Memorandum) corroborates Defendant's statement that he consulted with his supervisor and obtained his approval before taking any steps in regard to the case. Declarant Nevill also states that Defendant "... acted in accordance with applicable statutes, regulations and guidelines. As his supervisor, I authorized and approved the enforcement measures taken in regard to Captain Pastrana." (See Exhibit 3, Defendant's Memorandum, paragraphs 7, 8, 9).

16. David R. Harrington, Acting Manager, Air Transportation Division, Office of Flight Standards, F.A.A., states in his declaration that "Mr. Chestnutt was at all times acting within the scope of his authority as a Federal Aviation Administration Principal Operations Inspector." (See Ex-

hibit 1, Defendant's Memorandum, paragraph 25).

17. Defendant's October 28, 1981 letter stated that Plaintiff's failure to maintain control of his aircraft warranted his re-examination and that Eastern had been advised not to use Plaintiff as a pilot-in-command until the re-examination had been completed. (See Exhibit 2–H, Defendant's Memorandum).

18. The language in Defendant's letter regarding non-utilization of Plaintiff as a pilot is not binding on the air carrier (Eastern) who may elect not to comply with the request. (See Exhibit 1, Defendant's Memorandum, paragraphs 19–21; Exhibit 2, Defendant's Memorandum, paragraph 27).

19. While Chapter 1, paragraph 8.S01(a)(4) of F.A.A. Order 8430.6B, Southern Region Suppl. 3, (Exhibit 2–L, Defendant's Memorandum) specifically authorizes the issuance of a letter of the type issued herein in the event of a landing at the wrong airport under normal conditions, paragraph 8.S01(b) instructs POI's, in all cases not involving landings at the wrong airport, to "coordinate with the appropriate program manager on the aircraft involved to determine the need for re-examination of flight members."

20. Exhibit 2 to Defendant's Memorandum, specifically paragraphs 15. and 18. therein, and Exhibits 2–D, 2–N, 2–O, 2–P, 2–Q, 2–R and 2–T to Defendant's Motion detail Defendants' efforts to coordinate the appropriate cause of action with Eastern regarding Plaintiff's actions.

21. Section 609, Federal Aviation Act of 1958, authorizes the Administrator to re-examine a civil airman under certain circumstances. "Factual evidence, other than a committed or existing violation, can be used to *initiate* enforcement action under Section 609 of the Act." (emphasis added). (See Exhibit 2–K, Defendant's Memorandum).

22. Based on the factual evidence of Plaintiff's possible violation of 14 C.F.R. 121.563 and 14 C.F.R. 91.9, Defendant *"requested* Emergency suspension under 609 on Captain Pastrana and First Officer Hart pending re-examination...." (emphasis added). (See Exhibit 2–N, Defendant's Motion). The National Transportation Safety Board, in affirming the holding of the Administrative Law Judge in this matter held that a violation of 14 C.F.R. Section 91.9 had in fact been established. (See Exhibit B, Defendant's Memorandum).

23. A requirement for re-examination by a POI does not suspend or revoke an airman's certificate. Re-examination is required in order for the F.A.A. to determine qualifications of an airman to continue to hold a certificate. (See Exhibit 1, Defendant's Memorandum, paragraphs 21 and 22; Exhibit 2–K, Defendant's Memorandum).

24. In point of fact, Eastern had removed Plaintiff from flight status on October 27, 1981, (the day prior to Defendant's letter) for violating Eastern flight policy. (See Exhibits 2–D and 2–F, Defendant's Memorandum).

25. Defendant's request that Plaintiff be re-examined, (see Exhibit 2–O, Defendant's Memorandum), before returning to flight status was rejected by Eastern who advised Defendant that Eastern would return Plaintiff to flight status following completion of Eastern's own corrective action. (See Exhibit 2–R, Defendant's Memorandum).

26. Upon receipt of notice that Plaintiff would be returned to flight duty, Defendant contacted the F.A.A.'s Regional Counsel's Office in Atlanta. After receiving a report of the investigation of this matter on November 12, 1981, the F.A.A. Regional Counsel's Office issued an Emergency Order of Suspension to Plaintiff. (See Exhibit 2–S, Defendant's Memorandum). Suspension is authorized "in situations where a certificate holder resists re-examination or re-inspection under Section 609 of the Federal Aviation Act." (See Exhibit 1, Defendant's Memorandum, paragraph 24). This suspension is not complained of on appeal. *Pastrana,* at 1449.

27. Plaintiff subsequently completed re-examination by the F.A.A. and was released from suspension. (See Exhibit 2–T, Defendant's Motion).

### C. *Plaintiff's Response To Defendant's Motion For Summary Judgment*

28. In his Memorandum in Opposition to Defendant's Motion For Summary Judgment (DE 76) ("Plaintiff's Memorandum"), Plaintiff states that Defendant, "an employee of the F.A.A. acting ostensibly in his capacity as POI totally outside any statutory or regulatory authority granted to his position suspended Plaintiff's Airline Transport Pilot Certificate without the due process rights which would have been afforded to Plaintiff had the suspension been lawful." (Plaintiff's Memorandum, at 2).

29. Plaintiff further states that Eastern, upon receipt of Defendant's letter, "suspended Plaintiff without pay even though Eastern knew or should have known that Inspector Chestnutt was wholly without legal authority to take or enforce his action of October 28, 1981." (Plaintiff's Memorandum, at 4.) Plaintiff further asserts that Defendant is not entitled to qualified immunity "Because Chestnutt had no discretion to order Eastern Air Lines to ground Plaintiff, he was not even performing a discretionary function." (Plaintiff's Memorandum, at 13).

30. Plaintiff did not attach any affidavits or declarations to his Memorandum in response to Defendant's Motion For Summary Judgment, but attached exhibits consisting of letters and FAA regulations. Exhibit D to Plaintiff's Memorandum is a copy of a letter dated October 30, 1981, from A.W. Dunlap, Director and Chief Pilot for Eastern to Plaintiff advising him that he had been removed from flight and pay status until Plaintiff completed re-examination as specified in Defendant's October 28, 1981 letter.

### D. *Standard For Summary Judgment*

31. Rule 56(e), Federal Rules of Civil Procedure, states in part:

> ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

32. As set forth above, Defendant has submitted affidavits and declarations pursuant to Rule 56 which establish that in issuing the letter Defendant acted in good faith, with the full support of and at the direction of his supervisor, and within the scope and authority of his position as a POI and, that the letter did not suspend Plaintiff's flying certificate and therefore did not violate Plaintiff's constitutional rights.

33. The Supreme Court has recently detailed the non-moving party's burden in responding to motions for summary judgment:

> ... a motion for summary judgment may be made pursuant to Rule 56 "with or without supporting affidavits." In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule", and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corporation v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).

34. In opposing a motion for summary judgment the nonmoving party need not:

> ... produce evidence in a form that would be admissible at trial in order to avoid summary judgment ... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves, and it is from this list that one would

normally expect the nonmoving party to make the showing to which we have referred. *Celotex Corporation*, 477 U.S. at ——, ——, 106 S.Ct. at 2553, 2554, 91 L.Ed.2d at 274, 275. (emphasis added).

35. Regarding the entry of summary judgment, "... the mere possibility that a factual issue may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *United States v. Potamkin Cadillac Corporation*, 689 F.2d 379, 381 (2nd Cir.1982), citing *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). A party opposing summary judgment "... must bring to the district court's attention some affirmative indication that his version of the relevant facts is not fanciful." *Potamkin*, at 381.

... Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions. Once the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner—whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial. *Fireman's Insurance Company of Newark, New Jersey v. DuFresne*, 676 F.2d 965, 969 (3rd Cir.1982).

36. As the Supreme Court has warned, a plaintiff in an action concerning constitutional violations who is responding to a motion for summary judgment based on the defense of immunity "... may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits." *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). Insubstantial claims against government officials should not proceed to trial. *Butz*, at 507, 98 S.Ct. at 2911.

37. E.P. Marfisi, Eastern's Director of F.A.A. Liaison, states in his letter of October 7, 1985 to Defendant (which is attached to Defendant's Memorandum as Exhibit 2–D), that Plaintiff was removed from flight status *by Eastern* (emphasis added) on October 27, 1981, the day prior to Defendant's letter, because of Plaintiff's failure to comply with Eastern's regulations. Mr. Marfisi's letter concerning Eastern's grounding of Plaintiff is corroborated by A.W. Dunlop's inter-office memo dated August 9, 1982 to M.A. Soll, wherein Mr. Dunlop states, "In correspondence dated October 27, 1981, Captain Pastrana was removed from flight status pending an investigation." (Exhibit 2–E, Defendant's Memorandum.)

■ 38. The Court finds that the Defendant's letter did not suspend or revoke Plaintiff's certificate, nor was it intended to do so. The letter was issued by Defendant in his capacity as a POI, pursuant to applicable regulations and statutes, with the full knowledge, consent, and at the direction of, his supervisors. The Court finds that Eastern grounded Plaintiff for his failure to comply with applicable regulations, and Plaintiff's certificate was temporarily revoked by Counsel for the F.A.A. pursuant to appropriate statute, not by Defendant. (See Exhibit 2–S, Defendant's Memorandum). If Defendant's letter had constituted a de facto suspension of Plaintiff, Eastern could not have unilaterally opted to place Plaintiff back on flight status, (see Exhibits 2–O, 2–P, 2–Q and 2–R, Defendant's Memorandum) and, if the letter had been a suspension there would have been no need for the F.A.A.'s Regional Counsel to issue the Emergency Order of Suspension on November 12, 1981.

E. *Qualified Immunity*

■ 39. Contrary to the contentions in Plaintiff's Response that Defendant is seeking absolute immunity as a government official for his actions, the Court's review of the Motion, pleadings and other documents in this matter indicate that it is Defendant's position that he is entitled to qualified immunity.

40. As stated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "... Government officials are entitled to some form of immunity from suits for damages

... to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow,* at 806, 102 S.Ct. at 2732.

41. Officials in the executive branch such as Defendant are generally entitled to qualified immunity. *Harlow,* at 807, 102 S.Ct. at 2732. In *Harlow,* the Supreme Court rejected the "subjective" aspect of the "good faith test" and set forth the test to be applied in circumstances like the case at bar to determine whether qualified immunity applies:

> ... government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow,* at 818, 102 S.Ct. at 2738.

### CONCLUSIONS OF LAW

1. The Court finds that, applying the facts and circumstances of this matter as set forth in Defendant's Memorandum and the supplements thereto, together with Plaintiff's Response to Defendant's Motion For Summary Judgment, to the *Harlow* test, that Defendant, in sending the October 28, 1981 letter to Plaintiff, was performing a discretionary function of his position as a POI; that Defendant, in investigating the incident and in issuing the October 28, 1981 letter to Plaintiff, acted within the overall authority of his position as POI pursuant to applicable regulations and statutes; that the October 28, 1981 letter was a proper exercise of Defendant's discretion as a POI which was issued with the full knowledge and support of Defendant's supervisors. The Court also finds that, as stated above, the letter did not suspend or revoke Plaintiff's certificate which is the act Plaintiff complains of. The Court finds it significant that the propriety and reasonableness of Defendant's letter is reflected by the decisions of the Administrative Law Judge and the National Transportation Safety Board in determining that Plaintiff had been guilty of violating applicable rules and regulations. (See Exhibits A and B, Defendant's Memorandum). Plaintiff does not challenge the Emergency Suspension Order itself. *Pastrana,* at 1449. Plaintiff has not demonstrated that the October 28, 1981 letter constituted a violation by Defendant of any of Plaintiff's clearly established statutory or constitutional rights. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

2. The Court finds as a matter of law that Plaintiff has failed to meet his burden under Rule 56, Federal Rules of Civil Procedure, as required of him by *Celotex Corporation v. Catrett, supra.* Plaintiff has failed to demonstrate that there is any genuine issue of material fact as to a violation of Plaintiff's clearly established statutory or constitutional rights by Defendant's discretionary action in writing the October 28, 1981 letter and the Defendant is entitled to judgment as a matter of law., it is

After due consideration, it is

ORDERED AND ADJUDGED as follows:

A. The Court has personal jurisdiction over the parties hereto and the subject matter herein;

B. Defendant, Bryant M. Chestnutt's, Motion For Summary Judgment (DE 62) be and the same is hereby GRANTED;

C. Summary Final Judgment be and the same is hereby entered in favor of Defendant, Bryant M. Chestnutt, and against Plaintiff, Captain Raul Pastrana, and Plaintiff, Captain Raul Pastrana, shall take nothing from this action and the Defendant, Bryant M. Chestnutt, shall go hence without day; and

D. The Court reserves jurisdiction solely for the purpose of assessing any attorneys' fee or cost that may be proper.