Francoise SAMEDI, Plaintiff,

v.

MIAMI–DADE COUNTY,
et. al., Defendants.

No. 98–3055–Civ.

United States District Court,
S.D. Florida.

March 14, 2002.

Patricia Clarice Ellis, Opa–Locka, FL, Marie Gilberte Thompson, Boynton Beach, FL, for plaintiff.

Thomas A. Tucker Ronzetti, Dade County Attorney's Office, Miami, FL, for defendants.

### ORDER GRANTING THE COUNTY'S SECOND MOTION FOR SUMMARY JUDGMENT

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court upon Defendant Miami–Dade County's Motion for Reconsideration or, alternatively, for Summary Judgment, filed February 8, 2001. On January 26, 2001, this Court entered an order granting, in part, and denying, in part, summary judgment with respect to Plaintiff's claims against the County and other Defendants. The County now asks the Court to consider portions of the order denying summary judgment or consider its second motion for summary judgment. For reasons discussed *infra,* the Court treats the Plaintiff's Motion as a second motion for summary judgment.

## Background [1]

The Plaintiff is a black woman who arrived in Miami, Florida from her native Haiti in 1992. Shortly after her arrival in Miami, the Plaintiff found employment through various temporary agencies. These agencies secured work for the Plaintiff as a temporary employee in the Trash Division of the Solid Waste Management Department of Metro Dade County ("County"), beginning in 1992 and continuing at least until 1999. *See* Samedi Dep. at 12. The Plaintiff has received her paychecks from the various temporary employment agencies that employ her, and not from County. At no time has the Plaintiff ever been hired as a County employee.

When the Plaintiff began working at County, she spoke only Creole. She completed four years of formal schooling while in Haiti. At all times relevant to the instant case, the Plaintiff spoke and understood very little English and was unable to read English. The Plaintiff's lawsuit stems from numerous incidents of heinous sexual assaults that two County employees, Lem Jones and Donald Godwin, allegedly committed against her at various times beginning in September 1992 and ending, at the latest, by August 25, 1997. *See* Samedi Dep. at 147–48.

During the time period when she was subjected to the events underlying the instant case, the Plaintiff was routinely assigned job duties both "in the field" and in office environments. In the field, the Plaintiff rode on a clean-up truck that visited different dumping stations. She also worked with crane operators who used their machines to collect trash from residential areas or from the side of the road. The Plaintiff functioned as a grounds person, responsible for picking up trash from those areas. During her assignments in the offices at County, the Plaintiff performed custodial tasks. On more than two occasions, she was instructed to clean and cook fish that County employees brought to the office.

From September 1992 until August 25, 1997, Lem Jones was a County employee working as a trash crane operator for the Trash Division of the Solid Waste Department. Donald Godwin was also a County employee within the Trash Division, working as a Waste Supervisor I. [2] In the course of her work at County, the Plaintiff came into contact with both Jones and Godwin. The Plaintiff does not remember the number of incidents nor the particulars of every incident, however, Jones and Godwin separately forced Plaintiff to have sex with each of them, separately, on many occasions during working hours. [3] Both Jones and Godwin told the Plaintiff that she had to submit to them because they were her superiors at work. The Plaintiff feared that she would be fired if she did not comply. She also believed that County would permanently hire her if she engaged in sex with Jones and Godwin. *See* Pl.'s St. of Material Facts in Supp. of Pl.'s Mem. Opp. to Def.s' Mot. for Summ. J at ¶ 17 (describing the Plaintiff's fear of losing her job, as well as her "embarrassment and shame," as reasons why she did not

1. This background is a slightly abbreviated version of the section in the Court's previous order. *See Samedi v. Miami–Dade County,* 134 F.Supp.2d 1320 (S.D.Fla.2001).

2. The Federal Employment Fair Practices Office, an agency of the County managers, conducted an investigation into Plaintiff's complaint against Jones and Godwin. Pursuant to that investigation, both Jones and Godwin were demoted. *See* White Dep. at 47.

3. Neither Jones nor Godwin have been prosecuted in connection with the allegations in the instant case.

report Jones and Godwin's abuse of her) (internal citations omitted).

Approximately two weeks after the Plaintiff began working at County in September 1992, and until sometime in 1996, Lem Jones forced the Plaintiff to have sex with him. The first incident happened at work while the Plaintiff and Jones were in the cab of a trash crane vehicle. *See* Samedi Dep. at 42–43. While the Plaintiff fought against Jones, he pushed her, told her that he was her boss, and had forced sexual relations with her. Not until August 25, 1997, nearly five years after the incident, did the Plaintiff lodge a complaint with anyone at County regarding what Jones had done to her on that day or at any other time.

On another occasion, Jones forced the Plaintiff to have sex with him at a motel during their lunch break from work. The Plaintiff did not tell anyone about this event for fear that she would lose her job. At another time, Jones removed the Plaintiff's underwear and he, along with another co-worker, paid a female passerby "to stick her tongue in [Plaintiff's] private" against the Plaintiff's will. *id.*, at 30. On yet another occasion, Jones instructed a male co-worker to remove his clothing. Jones then asked the Plaintiff to join the nude man, but the Plaintiff fled. In addition to these events, Jones would refuse to take the Plaintiff to a restroom while they worked together in the field; the Plaintiff would have to urinate on public streets, sometimes while Jones watched her.

For unspecified reasons, the Plaintiff stopped working on Jones's crew in 1996. Thereafter, Jones no longer forced sexual encounters on the Plaintiff. Even once the

Plaintiff resumed work on Jones's crew in 1997, Jones did not have any further sexual contact with the Plaintiff. However, sometime in 1996 or 1997, Donald Godwin began to force sexual relations[4] on the Plaintiff. One incident occurred in the bathroom of an office at the Trash Division's 58th Street site in Miami. The Plaintiff tried to fight Godwin, but he physically overwhelmed her, threatened to fire her if she did not comply, and forced her to perform fellatio on him. Perhaps a month later, Godwin forced sexual relations on the Plaintiff in a "box house" where cleaning supplies were stored. Godwin threw the Plaintiff to the floor, told her that he was her boss and/or her supervisor, and threatened her that he was going to fire her if she did not submit. As he committed the sexual act, Godwin called the Plaintiff a "Haitian dumb." *id.* at 117.

At another time, Godwin ostensibly was to drive the Plaintiff home in one of the County's cars so she could get footwear more appropriate for her working conditions. Instead of proceeding to the Plaintiff's home, Godwin parked the car in a wooded area and forced the Plaintiff to have non-consensual sex on the ground outside the car. Sometimes while Godwin worked on Jones's crew, Godwin would come out to the field where the Plaintiff worked, telling her that he had work for her to do. Several times, "when he got to the truck with me, sometimes he would get his pants down and he asked me to suck his private." *Id.*, at 123. In addition, Godwin once took the Plaintiff to his friend's home where Godwin had forcible sex with Plaintiff. Afterwards, the Plaintiff "tried" to tell Jones that Godwin had

---

4. The precise nature of these sexual relations is not clear from the Plaintiff's deposition testimony, nor is the Court required to delve into the debasing minutiae of these events. For the purposes of these motions, it is suffi- cient to note that, construing the facts in the light most favorable to Plaintiff, she was subjected to digital vaginal penetration, sexual intercourse, and/or oral copulation.

taken her to his friend's home and had sex with her, but the Plaintiff believes that Jones did not understand her English. *See Id.* at 126. The Plaintiff admits that she told no supervisors or human resources personnel at County until August 25, 1997 about what Godwin had repeatedly done to her.

The Plaintiff interviewed for a permanent job with County in March 1997, and on two other occasions.[5] *id.* at 17–22. That position required communication skills such that the employee can both "instruct[ ] citizens in backing their vehicles in order to dump their trash" and orally "inform[ ] the public as to the procedures for dumping." Brewer Decl. at Ex. 1. The position also requires an eighth grade education. *id.* The Plaintiff did not receive an offer for this position, yet she continued working at County as a temporary employee.

Matters between the Plaintiff and the County came to a head on August 25, 1997 when Alonzo Wright, a County employee, told Plaintiff and several other temporary workers that no work was available for them that day. The Plaintiff and the other workers went to see Defendant White about the reduction in their work hours. White referred them back to Mr. Wright, who provided no response. The group was apparently directed to the office of Pamela Payne, Chief of the Human Resources Division for County's Department of Solid Waste Management. At that point, the Plaintiff divulged to Ms. Payne the allega-

tions of sexual assault and sexual harassment against Jones and Godwin. *See* Payne Decl. at ¶ 4. Ms. Payne began an investigation immediately. As a result of the investigation, both Jones and Godwin were relocated away from the Plaintiff's work site and were demoted.

Prior to August 25, 1997, the only person the Plaintiff told about any of the incidents involving her and either Godwin or Jones was her co-worker, Inetha Hawkins. *See* Samedi Dep. at 34–35. The Plaintiff recounted to Ms. Hawkins "what Don [Godwin] did to me." *Id.* at 35. After the events of August 25, 1997, the Plaintiff retained counsel. On September 8, 1997, the Plaintiff lodged a County Affirmative Action Complaint and an EEOC Charge of Discrimination on the basis of sex and national origin discrimination. *See* 2nd Am. Compl. at Ex. A & C. On September 9, 1998, the Plaintiff received a Right to Sue Leter. *See* 2nd Am. Compl. at Ex. B. The instant case was filed on December 14, 1998.[6]

### Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Material" facts are those that relate to the substantive law of

---

5. Whether or not the Plaintiff applied for a County position, as opposed to the County offering her a courtesy interview for the job on its own initiative, is unclear. *See* Samedi Dep. at 13–15 (testifying that she was interviewed for a permanent, County job but not specifying whether she actually applied for the position); Brewer Decl. at ¶ 3 ("temporary workers such as Francoise Samedi were given a 'courtesy' interview regardless of whether they applied").

6. After the Court's Order of January 26, 2001, the following claims remain against the County: (1) Count I: Title VII Sexual Harassment–Hostile Work Environment; (2) Count II: Title VII Sexual Harassment and Sexual Assault Quid Pro Quo; (3) Count XII: Negligent Retention.

each cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one about which a reasonable fact finder could find for the nonmoving party. *Id.* The initial burden in a motion for summary judgment falls on the moving party "to show the district court, by reference to materials on file, that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The district court must view that evidence in the light most favorable to the nonmoving party. *Rollins v. TechSouth, Inc.* 833 F.2d 1525, 1528 (11th Cir.1987).

Once the moving party meets the initial burden, the burden shifts to the nonmoving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. To avoid a grant of summary judgment, the nonmoving party must then supplement the record with "specific facts demonstrating that there is a genuinely disputed factual issue for trial." *Pastrana v. United States*, 670 F.Supp. 954, 960 (S.D.Fla.1987). Parties may not rely on the pleadings alone to satisfy their respective burdens on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Federal Rule of Civil Procedure 56(c) provides, in pertinent part, that "[t]he adverse party prior to the day of hearing [on a motion for summary judgment] may serve opposing affidavits. The judgment sought [that is, summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c).

## *Analysis*

### I. Second Motion for Summary Judgment

■ This Court has discretion to consider a second motion for summary judgment. *See Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir.1990). While the Court maintains that the County's first Motion for Summary Judgment was patently inadequate with regards to the *Faragher* defense, the Court believes it would be just to consider a second Motion for three reasons. First, the issue of which party has the burden to plead and prove the absence or presence of a "tangible employment action" is sufficiently unclear from the case law. Thus, the Court believes it would be draconian in this case to ignore what would otherwise be a successful motion for summary judgment, simply because of the County's earlier omission. Second, the issuance of the Court's Order of January 26, 2001, which obviously was not available at the time the County submitted its first Motion for Summary Judgment, makes the result of this present Motion almost inevitable. Third, the prejudice to the Plaintiff is minimal as discovery has been closed and the case has not yet been set for trial. Therefore, the Court will construe the County's Motion as one for summary judgment. In ruling on this second summary judgment motion, the Court has considered the parties' pleadings on this second motion as well as the parties' original pleadings.

### II. Faragher Defense

■ The County moves for summary judgment on Counts I and II based on its assertion of the so-called "Faragher affirmative defense" to Title VII liability for an employer "when discriminatory misuse of supervisory authority alters the terms and conditions of a victim's employment ..." *See Faragher v. City of Boca Raton*, 524

U.S. 775, 803, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). An employer may successfully assert the *Faragher* defense only when three conditions are met. First, the defense is only available when no tangible employment action has been taken against the Title VII plaintiff. *Id.* at 807, 118 S.Ct. 2275. Second, the employer must show that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Finally, the employer must show that the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.*

### I. *Tangible Employment Action*

■ In order to raise the Faragher defense, no tangible employment action must be taken. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("When no tangible employment action is taken, a defending employer may raise an affirmative defense …"). A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The Plaintiff, in this case asserts a whole host of complaints, but they basically boil down to the fact that she was: (1) denied permanent employee status (i.e. denied "promotions"); (2) sent home early when other temporary workers stayed at work; (3) forced to suffer a severe hostile working environment.

■ With regard to the Plaintiff's first alleged tangible employment action, this Court has already held that the denial of permanent employee status was not based on a discriminatory animus. *See Samedi*

*v. Miami–Dade County,* 134 F.Supp.2d 1320, 1344–47 (S.D.Fla.2001). "Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense." *Lissau v. Southern Food Service, Inc.,* 159 F.3d 177, 182 (4th Cir.1998). Therefore, the Plaintiff can not rely on the County's denial of a permanent position, to fulfill the "tangible employment action" requirement.

The Plaintiff's second allegation relates to a single incident. According to the Plaintiff's deposition, she came to work in sandals and was told to go home and change into boots. A supervisor drove her home and allegedly assaulted her. Then he took her home and told her there was no need to go back to work and that she would be paid for the day. When she received her check, however, she noticed that she was only paid for four hours. *See* Samedi Dep. at 127. While this is an example of harassment or hostile work environment, it clearly does not represent a significant change in employment status and therefore does not constitute a tangible employment action.

■ The other allegations the Plaintiff makes also relate to a severe hostile working environment, including instances of sexual assault. However, the law is clear that a severe hostile work environment does not constitute a tangible employment action. *See e.g. Casiano v. AT & T Corp.,* 213 F.3d 278, 283 (5th Cir.2000). In fact, absent a tangible employment action, a Plaintiff is *required* to show severe or pervasive conduct, in order for the employer to be vicariously liable under Title VII for sexual harassment by a supervisor *Id.* Even after the Plaintiff shows severe or pervasive conduct, however, the employer may still use the *Faragher* defense if it can meet the two elements of the defense. *Id.*

The Plaintiff has not plead nor can the Court find any tangible employment action. Moreover, a Title VII action may be based only upon the specific complaints made by the employee's initial EEOC charge and any "like or related" to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination. *See Chanda v. Engelhard/ICC,* 234 F.3d 1219, 1225 (11th Cir.2000). Based on the Plaintiff's EEOC charge, we now hold that the Plaintiff's action is limited to acts of: sexual harassment, assault, and failure to promote. Each of these complaints have been addressed by this Court and none may be considered a tangible employment action in this case. Therefore, the County may plead the *Faragher* defense.

## 2. *Reasonable Care*

The first element of the *Faragher* defense requires the employer to show "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275. There appears to be no dispute as to whether the County's anti-sexual harassment policy is reasonable on its face. The County provides sexual harassment training to supervisors; posts its policy with a complaint procedure on a public bulletin board; and has a separate department known as the Office of Fair Employment Practices to receive and investigate complaints. *See* Saunders Decl.; White Depo at 50. Indeed, this Court has already held that the County's policy is reasonable. *See Douboulay v. Miami Dade County,* No. 97–CV–698 (DE# 78), slip op. at 14 n9, 15–16, n10 (S.D.Fla.1997).

The Plaintiff argues that she was never trained in the County's harassment policy nor was she given a written copy of the policy. However, many Courts have held that simply posting one's harassment policy on a bulletin board in a central location is enough to establish a reasonable dissemination of the policy. *See e.g. Savino v. C.P. Hall Co.,* 199 F.3d 925, 932–33 (7th Cir.1999); *Phillips v. Taco Bell Corp.,* 83 F.Supp.2d 1029 (E.D.Mo.2000); *Reynolds v. Golden Corral Corp.,* 106 F.Supp.2d 1243 (M.D.Ala.1999); *Corcoran v. Shoney's Colonial, Inc.,* 24 F.Supp.2d 601 (W.D.Va.1998). Moreover, the EEOC's employer compliance guide indicates that such a positing is sufficient. *See* EEOC, *Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors,* (visited March 5, 2002) <http://www.eeoc.gov/docs/harassment.html> ("Other measures to ensure effective dissemination of the policy and complaint procedure include posting them in central locations . . .")

The Plaintiff argues that she never saw the policy posted. Perhaps this is because she "never looked at anything" on the bulletin board. *See* Samedi Dep. at 140–41. However, it is irrelevant whether the Plaintiff actually saw the policy so long as it was posted in a reasonable place. *See Reynolds v. Golden Corral Corp.,* 106 F.Supp.2d 1243 (M.D.Ala.1999) (employer "need not establish that every employee read the posted policy to establish that it exercised reasonable efforts to communicate the procedure.") The Plaintiff has presented no evidence to suggest that the policy was never posted.

Samedi admitted in her deposition that she knew about a place where a lot of papers were posted but did know whether the policy was actually posted because she did not look at the papers. *Id.* None of the other employees deposed testified that the policy was not posted. At best, they testified that they did not know whether or not it was posted. *See e.g.,* Williams Dep. at 32 ("Q: have you ever seen this docu-

ment posted anywhere? ... A: A lot of stuff I didn't pay attention to. Q: So you don't know whether or not it was posted? A: No."). At least one employee actually testified that the policy was posted. *See* White Depo at 50. ("Q: Does the County have a sexual harassment policy that you're aware of? A: Yes, they do. Q: Is it written? A: It's posted at the work site. Q: It's posted? A: Yes Q: Where? A: ... on the bulletin board.")

Moreover, the fact that some employees were not sure whether the policy was posted does not suggest that the poster was too subtle. The document itself is quite conspicuous, and is headed "Sexual Harassment Policy," which is typed in a large white font, over a black box which stands out on the otherwise white page. To require a more conspicuous poster would be an exercise in excessive micro management in which the Court is not inclined to engage.

The Plaintiff also argues that the policy was not posted reasonably in light of the fact that she and the other Creole speaking employees "may not have understood it." See Pl.'s Resp. Mot. for Recons. at 13. The Plaintiff has not presented and the Court has not found any case requiring an employer to post a harassment policy in foreign languages in order to be considered reasonable. To the contrary, "the courts have recognized, whether explicitly or implicitly, that in an English-speaking country, requirements of 'reasonable notice' are satisfied when the notice is given in English." *Vialez v. New York City Housing Authority,* 783 F.Supp. 109, 120 (S.D.N.Y.1991), *quoting Alfonso v. Board of Review,* 89 N.J. 41, 444 A.2d 1075, 1077 (1982), *appeal dismissed and cert. denied,* 459 U.S. 806, 103 S.Ct. 30, 74 L.Ed.2d 45 (1982); *see also Soberal–Perez v. Heckler,* 717 F.2d 36, 43 (2d Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d

186 (1984); *Jordan v. Benefits Review Bd. of U.S. Dept. of Labor,* 876 F.2d 1455, 1460 (11th Cir.1989).

Even if under some unusual circumstances, posting in foreign languages might be a requirement of reasonableness, this does not appear to be one of them. The Plaintiff, has not presented any evidence or even argued that the Solid Waste department has any permanent employees who are unable read English. Similarly, the Plaintiff has presented no evidence and has not even argued that other than herself, there were even any temporary employees who spoke Creole and could not read English. Therefore, we hold that the County's posting was enough to fulfill the requirement of reasonable dissemination of a harassment policy.

■ The Plaintiff also argues that the County's corrective measures were insufficient. Factors to be considered in assessing the reasonableness of the County's corrective measures include (1) the amount of time elapsed between the notice of harassment and the remedial action, (2) the options available to the employer (such as employee training sessions, disciplinary action taken against the harasser, reprimands in personnel files, and terminations) and (3) whether or not the measures ended the harassment. *See Rheineck v. Hutchinson Technology, Inc.,* 261 F.3d 751, 756 (8th Cir.2001).

The first factor is the amount of time elapsed between the notice of harassment and the remedial action. It is undisputed that the Plaintiff first notified the County of her allegation of harassment on August 25, 1997. *See* Payne Decl. at ¶ 4; *Samedi,* 134 F.Supp.2d at 1353. In a letter dated September 12 (thirteen business days later), the County ordered the alleged harassers to cease and to desist and to have no further contact with the Plaintiff. Moreover, the letter notified the harassers that

they had been immediately and indefinitely reassigned to another work location. Courts have held that a sort of time elapse of this length is quite reasonable. *See Montero v. Agco Corp.*, 192 F.3d 856 (9th Cir.1999) (delay of "only 11 days" reasonable); *Slay v. Glickman*, 137 F.Supp.2d 743 (S.D.Miss.2001) (delay of two weeks reasonable). Additionally, the delay seems reasonable in light of the concerted efforts made to resolve the issue during the interim. *See* Payne Decl. at Ex. 6 "Summary of Events." Therefore, this factor points in favor of a finding of reasonable response.

The second factor is the options available to the employer. The steps the County took in this case included: immediately notifying the alleged harassers and warning them not to have any contact with the plaintiff, immediately reassigning them to a different work location, and notifying the state attorney's office. *Id.* at ¶ 4. Moreover, at least one of the harassers was eventually demoted. *See* Pl.'s Mem. Opp. Summ J. at ¶ 5. Although other cases have held that much less can be reasonable, comparison to other cases is somewhat meaningless in addressing this issue, as every instance of harassment requires a different response level. *See e.g. Jackson v. Arkansas Dept. of Educ., Vocational and Technical Educ. Div.*, 272 F.3d 1020, 1026 (8th Cir.2001) (response was reasonable where the defendant "conscientiously solicited [the Plaintiff] to ensure that the harassment had ended and encouraged her to inform her supervisors if the harassment continued.")

In this case, we find that the response was both significant and reasonable in light of the fact that, according to the County, the Plaintiff's allegations have never been corroborated, and in light of the fact that the County's responses resulted in no instances of further discrimination. The third factor is whether or not the measures ended the harassment and as just mentioned, it is undisputed that the County's response did end the harassment.

The Plaintiff argues that it would be improper to find as a matter of law that the County's response was reasonable in light of the Court's holding that "a question exists as to the reasonableness of the investigative and/or corrective action that the County undertook once it was on notice of Plaintiff's complaints of discrimination. Plaintiff offers evidence that County removed Defendant Goodwin from the site where Plaintiff worked only to reasssign him later to the very location where the Plaintiff was also working." *Samedi*, 134 F.Supp.2d at 1353. The Court, however, made this determination in the context of a "negligent retention" claim, which involves different considerations. In the context of the *Faragher* defense, we find that where, as here, the defendant acts promptly; takes significant steps to prevent further harassment and no further harassment results, the defendant has acted reasonably as a matter of law. *See Rheineck*, 261 F.3d at 756. While the Court does not believe this holding is inconsistent with its earlier holding, to the extent it is inconsistent, this Order supersedes the prior Order and is controlling.

Therefore, after extensive consideration and discussion of the first element of the *Faragher* defense, the Court finds that the County has pled and proven the element.

3. *unreasonable failure to take advantage*

The second element of the *Faragher* defense requires the employer to show that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

In Samedi's Second Amended Complaint, she states that "has been employed by the county since 1993" and that "from the beginning of [her] employment with the County until approximately August 1997, she has experienced sexual assault, sexual harassment, sex discrimination and discrimination based on national origin." *See* Pl.'s 2nd Amend. Compl. at ¶¶ 14,-15(a).

During that time she claims she was forcibly raped on a virtually consistent basis. *See Id.* The Plaintiff, however, took no steps to stop the violence, abuse and harassment. "The evidence shows that County had no reason to know of White, Godwin, or Jones' actions until 1997 when Plaintiff filed her complaint." *Samedi,* 134 F.Supp.2d at 1353.

In fact, the only example Samedi gives of how she attempted to prevent the harm was an incident in 1995 when she "complained" to Mr. Stringer, a supervisor "that [an employee] had referred to her negatively about her inability to speak English and her national origin." *See* Pl.'s Mem. Opp. Recons. at 8. Later that same day, the Plaintiff was reassigned, so that she would not have to work with the employee. *See* Pl.'s 2nd Amend. Compl. at ¶ 15(f). This "pleased" the Plaintiff. *Id.*

Not only is it totally unreasonable that the Plaintiff took no other action in four years to stop the alleged forcible rapes and harassment, but it seems inconceivable. The Plaintiff could have contacted the police, her temp agency, supervisors, or inquired with fellow employees about how to file a harassment complaint. The fact that she did nothing in the face of such extreme abuse, tends to shed some doubt on the Plaintiff's allegations. It makes even less sense in light of the fact that the Plaintiff knew how to complain about the behavior of other employees, did so in 1995, and was "pleased" with the result. *See Id.* There-

fore the Court finds that the Plaintiff's failure to do anything to prevent the harm she complains of was unreasonable and that all the elements of the *Faragher* defense have been proven.

Therefore, having been advised in the premises it is hereby ORDERED AND ADJUDGED as follows:

1. The County's Motion for Summary Judgment on Counts I and II is GRANTED.

2. As there are no remaining federal claims against the County, the Court declines to exercise jurisdiction over the Plaintiff's remaining state law claim (Count XII: negligent retention). *See* 28 U.S.C. § 1367(c)(3); *see also Kis v. County of Schuylkill,* 866 F.Supp. 1462 (E.D.Pa.1994) (where all federal claims against some defendants were dismissed, decision to entertain or dismiss pendent state law claims against those defendants was within district court's discretion.)

3. The County's Motion for Reconsideration is hereby DENIED as moot.